**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 17 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES CELLULAR
INVESTMENT COMPANY OF
OKLAHOMA CITY, INC., an
Oklahoma corporation,

      Plaintiff-Appellee and Cross-
      Appellant,

vs.

SOUTHWESTERN BELL MOBILE
SYSTEMS, INC., a Delaware and
Virginia corporation,

      Defendant-Appellant and Cross-
      Appellee.

No. 96-6140
96-6146
96-6294
(D.C. No. CIV 92-2327)
(W.D. Okla.)

---

ORDER AND JUDGMENT[*]

---

Before TACHA, BALDOCK, and KELLY, Circuit Judges.

This diversity case involves a dispute over the construction of a limited

partnership agreement between the general partner, Southwestern Bell Mobile

---

[*]This order and judgment is not binding precedent, except under doctrines
of law of the case, res judicata, and collateral estoppel. The court generally
disfavors the citation of orders and judgments; nevertheless, and order and
judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Systems, Inc. (SBMS) and one of four limited partners, United States Cellular Investment Company of Oklahoma City, Inc. (USC-OKC). Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm the district court's judgment.

## Background

The Oklahoma City SMSA Limited Partnership (OKC Partnership) was formed among competing applicants to operate a cellular telephone system within the five-county area of the Oklahoma City Metropolitan Statistical Area (Oklahoma City MSA). SBMS was the sole and managing general partner with a 40% interest as a general partner and a 22% interest as a limited partner, for a total interest of 62%. The remaining 38% interest was held by three other limited partners, including USC-OKC with a 14.60% interest.

The OKC Limited Partnership Agreement (Agreement) predated the establishment of outlying Rural Service Areas (RSA) for rural cellular service. The Agreement necessarily reflected the uncertainty prevailing before the FCC established the final boundaries for RSAs. The primary issue in this lawsuit is whether SBMS could expand into these rural areas on its own behalf, or whether instead it was obligated to do so on behalf of the limited partnership.

The central sections of the Agreement in dispute are §§ 8.8 and 7.2(f). Under Article VIII entitled "Obligations of General Partner," § 8.8 provides:

8.8  Cellular Service in Other Areas.  Nothing herein shall preclude the General Partner or an Affiliate thereof from providing Cellular Service independently from the Partnership in areas other than the SMSA and adjoining areas.  Applications by the General Partner or an Affiliate thereof to provide Cellular Service in areas adjoining the SMSA shall be deemed to be made on behalf of the Partnership pursuant to the terms of Section 7.2(f).

Aplt. App. 143, 145.

Section 8.8 references § 7.2(f) under Article VII entitled "Rights and

Powers of Partnership, General Partner and Limited Partners," and provides that:

7.2  Powers of the General Partner.  [T]he General Partner hereby is vested with the power to:
. . .
 (f) Subject to the provisions of Sections 5.2 and 5.4 herein, apply to the FCC on behalf of the Partnership for permits and licenses to provide Cellular Service in counties contiguous to the SMSA where such contiguous counties and the SMSA have a community of interest and where such expansion appears to be economically justifiable and would result in Cellular Service being provided by the Partnership in a unified area which includes the SMSA and contiguous counties, negotiate on behalf of the Partnership to reach mutually acceptable arrangements with other carriers desiring to provide service in such areas and decide and conduct all matters pertaining to such applications and to the Cellular Service that may result from such applications.

Aplt. App. 139-42.

Also relevant to the dispute is § 8.1 which provides::

8.1  Duty of the General Partner.  The General Partner will at all times act in the best interests of the Partnership.

Aplt. App. 143.

Section 8.8 defines the partnership service area in terms of "the SMSA [that is, the five-county Oklahoma Standard Metropolitan Statistical Area] and adjoining areas," but also provides that an application to provide cellular service in those "adjoining areas" by SBMS would be deemed "made on behalf of the Partnership pursuant to the terms of Section 7.2(f)." Section 7.2(f) appears to restrict the power given to SBMS to expand the area served by the OKC Partnership to "counties contiguous to the SMSA."

In 1987, three years after the Agreement was executed, the FCC established the boundaries for three Oklahoma RSAs, RSAs 3, 5 and 9. These RSAs encompass 22 counties, but only 6 counties within these RSAs are "contiguous counties to the SMSA" within the meaning of § 7.2(f). SBMS or the independent partnerships it organized applied for and were awarded construction permits for the three RSAs during 1990.

In 1992, USC-OKC filed this lawsuit. In its amended complaint, it alleged that SBMS usurped the rights of USC-OKC to provide cellular service in the three RSAs. Count I sought relief for breach of partnership agreement and count II for breach of fiduciary duty. Although relief was sought for USC-OKC as well as for the Partnership, both parties agree that USC-OKC's action is a direct action on behalf of USC-OKC, not a derivative action on behalf of the Partnership. See

- 4 -

USC-OKC's Reply Br. on Cross-Appeal filed Sept. 16, 1996 at 11; SBMS Answer Br. on Cross-Appeal and Reply Br. filed Aug. 30, 1996 at 34 n.26.

At trial, SBMS contended that the term "adjoining areas" in § 8.8 meant (and was limited to) "contiguous counties" in § 7.2(f). According to SBMS, because the three RSAs contained both contiguous and noncontiguous counties, it could not have filed an application on behalf of the OKC Partnership to provide rural cellular service limited to contiguous counties. Accordingly, SBMS argued that it was free to file independent applications for the three RSAs.

USC-OKC disagreed that the reference to § 7.2(f) in § 8.8 limited the application of SBMS's obligation to contiguous counties. It argued that § 8.8 allowed SBMS to provide cellular service only in areas other than the SMSA and adjoining areas, and that applications made by SBMS in adjoining areas are deemed to be made on behalf of the OKC Partnership regardless of whether the adjoining areas are contiguous counties or otherwise meet the discretionary powers criteria of § 7.2(f). In the alternative, USC-OKC contended that even if § 7.2(f) limited SBMS's obligation to file on behalf of the OKC Partnership to contiguous counties, SBMS could have submitted partitioned applications for the three RSAs, but did not.

After consideration of extrinsic evidence, the district court found that the parties did not intend the reference to "contiguous counties" in § 7.2(f) to limit

SBMS's obligations and duties contained in § 8.8, including the duty not to compete with the limited partners in adjoining areas. D. Ct. Finding Nos. 64, 70-74, Aplt. App. 374-77. While SBMS was not required to apply to provide cellular service in adjoining RSAs 3, 5 and 9, once it did so, any interest acquired was deemed on behalf of the OKC Partnership. D. Ct. Finding No. 73; Aplt. App. 377. The district court not only rejected SBMS's interpretation of the Agreement, but also found that even under that interpretation, and contrary to SBMS's conduct, SBMS could have applied to serve the three rural RSAs with partitioning as to contiguous counties. The district court awarded $9,531,543.13 in damages to USC-OKC, based upon its 14.6% interest in the total value of the three RSAs of $65,284,542.

On appeal, SBMS contends that (1) § 7.2(f) of the OKC Partnership Agreement is a limitation on the powers of SBMS as a general partner and was intended for the protection of the other partners in the partnership; (2) since the district court found that SBMS could have filed "partitioned applications," USC-OKC's injury was limited to the 6 contiguous counties and it was not entitled to damages for all 22 counties, (3) the damage evidence submitted by USC-OKC was not relevant to its injury, and (4) since USC-OKC failed to submit proof on an essential element of its case, the court of appeals should direct the district court to enter judgment for SBMS. In its cross-appeal, USC-OKC contends that the

district court under facts conceded (1) should have awarded punitive damages, and (2) should have imposed a constructive trust. The contentions of the parties are either beside the point or without merit and may be handled with dispatch.

Discussion

We review the district court's factual findings under the deferential clearly erroneous standard and its legal conclusions de novo. See Fed. R. Civ. P. 52(a); Salve Regina College v. Russell, 499 U.S. 225, 239-40 (1991). SBMS does not challenge the basic findings of fact made by the district court, only the scope of their application. Aplt. & Cross-Aplee. Br. at 2. The essence of SBMS's appeal is that the district court erred in calculating damages based upon 22 adjoining counties rather than limiting damages to 6 contiguous counties.

SBMS first argues that § 7.2(f) of the OKC Agreement is a limitation on the general partner's power and was intended for the protection of the other limited partners. According to SBMS, the "contiguous county" language was motivated solely by the limited partners' concern that the general partner not be allowed to pursue unlimited expansion of the Partnership's cellular service area and make unlimited "capital calls." The district court found that the language had its genesis in Chickasaw's (another limited partner) desire to limit the discretionary powers of SBMS, to assure that Chickasaw would participate in

cellular service within its exchange area and to assure that SBMS could not provide cellular service in Chickasaw's traditional exchange area independently from the OKC Partnership. D. Ct. Finding Nos. 56 & 57, Aplt. App. 371-72. Even if § 7.2(f) limits SBMS's discretionary powers regarding expansion in contiguous counties, the district court plainly found that the provision did not limit SBMS's duties to the OKC Partnership regarding expansion in "adjoining areas." Finding No. 64, 70-74, 151, Aplt. App. 374-77, 404. The district court's construction of the ambiguous provisions in the OKC-Agreement is anchored in its unchallenged findings concerning the intent of the parties; therefore, we must reject SBMS's argument that § 7.2(f) so limited its power to act on behalf of the Partnership.

SBMS next argues that since the district court found that SBMS could have filed "partitioned applications," USC-OKC's injury was limited to the 6 contiguous counties and it was not entitled to damages for all 22 counties. SBMS seizes on the district court's finding that it could have filed partitioned applications for the three RSAs. Finding No. 178, Aplt. App. 410. The district court made its finding in response to SBMS's position that its obligation to the partnership extended only to contiguous counties and it was not possible to file an application for an RSA that contained both contiguous and non-contiguous counties. There is no merit to SBMS's argument. SBMS never attempted to file

- 8 -

partitioned applications, and when it filed for adjoining areas, such applications were deemed to be made, in their entirety, on behalf of the OKC Partnership. The district court found that SBMS breached the OKC Agreement and its fiduciary duties by usurping partnership opportunities in adjoining counties, not merely contiguous counties. Finding Nos. 151-154; Aplt. App. 404.

SBMS also contends that the damage evidence submitted by USC-OKC was not relevant to its injury because it was based on an RSA-wide basis, rather than restricted to contiguous counties. It further contends that because USC-OKC failed to submit appropriate proof on an essential element of its case, damages, we should direct the district court to enter judgment for SBMS.

After determining that SBMS breached the OKC Agreement and its fiduciary duties and that such breaches were the proximate cause of USC-OKC's damages, the district court valued the profit interests in Oklahoma RSAs 3, 5 and 9 to the date of trial. Finding No. 198-201; Aplt. App. 421. SBMS's contentions are not tenable in light of the district court's unchallenged finding regarding the parties' intent concerning the relationship between §§ 8.1 and 7.2(f) of the OKC Agreement. Given that finding, SBMS was required to submit applications for RSAs adjoining the Oklahoma City MSA on behalf of, rather than independently of, the OKC Partnership. USC-OKC's damage evidence provided a satisfactory basis for the district court to award damages.

In its cross-appeal, USC-OKC contends that the district court erred in failing to award it punitive damages in accordance with its lengthy proposed findings and conclusions of law on the subject. See Aplt. App. 336-344. Instead, the district court found and concluded that "[t]he evidence does not support an award of punitive damages against SBMS." D. Ct. Finding No. 282, Aplt. App 438. We review the district court's denial of an award of punitive damages for an abuse of discretion. Green v. Johnson, 977 F.2d 1383, 1389 (10th Cir. 1992); Wright v. Sheppard, 919 F.2d 665, 672 (11th Cir. 1990). We have carefully reviewed the findings of fact that, according to USC-OKC, "not only supports, but also mandates, the imposition of punitive damages against SBMS." Aplee. & Cross-Aplt. Br. at 38. We are not persuaded. The district court's resolution of this issue was well within the bounds of permissible choice, particularly in light of the ambiguity contained in the OKC Agreement.

USC-OKC also argues that a constructive trust should be imposed upon SBMS's interests in the RSAs. According to USC-OKC, a constructive trust in the amount of $55,752,998.87 (value of the RSAs less USC-OKC's proportionate share) is necessary in order to prevent the unjust enrichment of SBMS and to deter future misconduct. See Aplee. & Cross-Aplt. Br. at 44-47.

A constructive trust would be an appropriate remedy were this a derivative action, however, neither the parties on appeal nor the district court treated it as

such. The OKC Partnership was not made a party, and neither party has raised the issue of whether USC-OKC may obtain its proportionate share of the value of the RSAs in a direct action.

By way of background, the OKC Partnership is a Delaware limited partnership with a Delaware choice-of-law provision. Aplt. App. 165. Delaware law allows a limited partner to bring a derivative action after demand upon the general partner or without demand if it would be futile. See Del. Code Ann. tit. 6., § 17-1001 (1996); Seaford Funding Ltd. Partnership, 672 A.2d 66, 69 (Del. Ch. 1995). Generally, whether an action is direct or derivative depends upon whether the injury alleged is independent of the injury suffered by the limited partnership. See Litman v. Prudential-Bache Properties, 611 A.2d 12, 15 (Del. Ch. 1992). Where the claim belongs to the partnership, "[l]imited partners ordinarily cannot enforce their proportional interest in a partnership claim as their individual claim." See 4 Alan R. Bromberg & Larry E. Ribstein, Bromberg & Ribstein on Partnership, § 15.04(g) at 15:34-35 (1996).

At the same time, limited partners can bring a direct action when the injury can be differentiated from that suffered by the other partners. See Litman, 611 A.2d at 15. Courts have allowed claims for (1) an accounting, (2) fiduciary breach, and (3) breach of the partnership agreement to proceed as individual claims in varying circumstances, id. § 15.04(h), at 15:35-37 (discussing claims

that may be either individual or partnership); HB General Corp. v. Manchester Partners, L.P., 95 F.3d 1185, 1195 (3rd Cir. 1996) (stating that breach of a partnership agreement "has been held to constitute an individual as well as a partnership claim"); see also Bromberg & Ribstein on Partnership, § 15.04(f), at 15:31-33 (discussing individual claims), particularly where the general partner has engaged in self-dealing and a direct action is necessary to protect a limited partner's investment, id. §§ 15.04(c), at 15:27 ("If the general partner(s) have a conflict of interest in enforcing a partnership right, the courts are likely to allow one or more limited partners to enforce it by, for example, direct suit . . . ."), at 15:29 ("Extreme situations . . . may justify a single limited partner's action."); 15.01(c)(2), at 15:10 (discussing reasons for allowing a limited partner to enforce partnership rights). In Jaffe v. Harris, 338 N.W. 2d 228 (Mich. App. 1983), rev'd in part, appeal denied, 355 N.W.2d 617 (Mich. 1984), limited partners with an eight-percent interest obtained a judgment for their allocable share of unauthorized management fees and withdrawals taken by the general partner, notwithstanding a later appellate ruling that allowed them a derivative action. Id. at 230-31.

Regardless, SBMS has waived any argument that USC-OKC could not proceed with its claims in a direct action by failing to assert such an argument. We will not allow USC-OKC to achieve the result of a derivative action (a

- 12 -

constructive trust imposed for the benefit of the limited partnership and its members) without having instituted a derivative action and naming the limited partnership.

Without benefit of briefing, the dissent concludes that the OKC Partnership is an indispensable party and that this action must be dismissed for want of subject matter jurisdiction. The dissent's conclusion is based on the incorrect premise that only derivative claims are involved in this lawsuit. The distinction between direct and derivative actions is often difficult to apply and the same set of facts may result in direct and derivative claims. Grimes v. Donald, 673 A.2d 1207, 1212-13 (Del. 1996). We do not read the amended complaint, the final pretrial order, or the district court's analysis as precluding direct relief. See Fed. R. Civ. P. 8(e) (allowing multiple theories). For example, the OKC Agreement specifically allows each limited partner "a formal account of partnership affairs whenever circumstances render it just and reasonable," Aplt. App. 142, and OKC-USC sought an accounting as well as damages. Moreover, given that SBMS owns 62% of the limited partnership and has not been injured by its conduct (indeed, it has profited), the non-SBMS limited partners including USC-OKC have an injury that is separate and distinct from SBMS and the limited partnership.

Plainly, SBMS has waived any argument that the OKC Partnership is a necessary party. See State Farm Mut. Auto Ins. Co. v. Mid-Continent Cas. Co.,

- 13 -

518 F.2d 292, 294 (10th Cir. 1975) ("No objection was made that Garton was a necessary party under Rule 19(a), so that objection is waived.). Thus, the statement that "[w]e must protect the interests of an absent necessary party, and have a duty to ensure that the best possible parties litigate this suit," Dissent at 5, is not accurate. Only if the OKC Partnership is an indispensable party would dismissal for lack of jurisdiction be appropriate. To the extent that the OKC is not a necessary party, the indispensability inquiry need not be considered. State Farm, 518 F.2d at 294.

Although a court may raise the indispensable party issue sua sponte, we have no need to do so. The district court did not commit plain error in awarding relief to USC-OKC on a direct basis. See Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1516 (10th Cir. 1984) (discussing strictness of plain error review), aff'd, 472 U.S. 585 (1985). With relief awarded on direct claims against the sole general partner of the OKC Partnership, we are not required to consider the interests of absent parties.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
U.S. Circuit Judge

- 14 -

Editor's Note:

     While the order and judgment was not designated for publication, the dissent which follows is published.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 17 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES CELLULAR
INVESTMENT COMPANY OF
OKLAHOMA CITY, INC., an
Oklahoma corporation,

    Plaintiff-Appellee and Cross-
    Appellant,

vs.

SOUTHWESTERN BELL MOBILE
SYSTEMS, INC., a Delaware and
Virginia corporation,

    Defendant-Appellant and Cross-
    Appellee.

No. 96-6140
No. 96-6146
No. 96-6294

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-92-2327-M)

---

G. Blaine Schwabe, III (Sarah A. Hall and J. Matthew Thompson, with him on the
briefs) of Gable, Gotwals, Mock, Schwabe, P.C., Oklahoma City, Oklahoma, for
Plaintiff-Appellee/Cross-Appellant.

Dennis G. Lyons of Arnold & Porter, Washington, D.C. (Carol L. Tacker, Dallas,
Texas; Kenneth N. McKinney and Charles C. Green of McKinney, Stringer &
Webster, P.C., Oklahoma City, Oklahoma; James E. Scarboro of Arnold & Porter,
Denver, Colorado; and Norman M. Sinel, Patrick J. Grant, Ellen T. Noteware, and
Paul S. Feira, Of Counsel, Arnold & Porter, Washington, D.C., with him on the
briefs), for Defendant-Appellant/Cross-Appellee.

Before TACHA, BALDOCK, and KELLY, Circuit Judges.

BALDOCK, Circuit Judge, dissenting from an unpublished order and judgment.

The court's opinion would be absolutely correct if, as the court concludes, USC-OK's action against SWBS is a direct one. Unfortunately, the court's conclusion is erroneous. USC-OK's action is derivative in nature. Because the action is derivative, an indispensable party, namely the OKC Partnership, was not before the district court. Because the joinder of the Partnership would have destroyed diversity jurisdiction in the district court, that court lacked jurisdiction to adjudicate this matter. See First Nat'l Bank & Trust Company v. McKeel, 387 F.2d 741, 743 (10th Cir. 1967) (if joinder of an indispensable party would oust the court of diversity jurisdiction, then dismissal would be compelled). Accordingly, I dissent.

As this is an action against a general partner for breach of fiduciary duty owed to the OKC Partnership, we first ask whether this action is a direct action or a derivative one. In a diversity case, the characterization of an action is a state law question. See McDaniel v. Painter, 418 F.2d 545, 547 (10th Cir. 1969). The Partnership Agreement in this instance provides that Delaware law controls. Thus, under Oklahoma's choice-of-law rules, we look to Delaware law to determine whether this action is direct or derivative. See Okla. Stat. Ann. tit. 15,

- 2 -

§ 162 (West 1993); <u>Bohannan v. Allstate Ins. Co.</u>, 820 P.2d 787, 793-96 (Okla. 1991).

Under Delaware law, the distinction between direct and derivative actions, "rests upon the [plaintiff] being directly injured by the alleged wrongdoing." <u>Litman v. Prudential-Bache Properties, Inc.</u>, 611 A.2d 12, 15 (Del. Ct. Chan. 1992) (treating limited partnership same as corporation to determine the derivative nature of action), <u>amended by</u>, 1992 WL 94369 (Del. Ct. Chan. 1992) (unpublished) (amendment irrelevant). The plaintiff's injury must be "separate and distinct from that suffered by other [partners]" and it must exist "independently of any right of the [partnership]." <u>Id.</u> Thus, discerning the nature of an action–derivative or direct–requires an examination of the alleged injury. <u>See</u> <u>id.</u>

The Amended Complaint reveals that USC-OK brought this action for damages to the OKC Partnership. The prayer of the Amended Complaint requested the following relief:

> (a)    a declaration that defendant's interests in the cellular systems in Oklahoma RSAs 3 and 5 are held <u>on behalf of the partnership</u>;

> (b)    an injunction requiring defendant to take all measures to transfer its interest in the cellular systems in Oklahoma RSAs 3 and 5 <u>to the partnership</u>;

(c)     an accounting of revenues generated by the cellular systems in Oklahoma RSA's 3, 5, and 9 and profits earned therefrom by defendant;

(d)     a injunction requiring Southwestern to share <u>with the partnership</u> any and all benefits derived from its applications to provide cellular service in Oklahoma RSAs 3 and 5 . . . .

Amended Complaint at 10 (emphasis added).  The prayer of each count of the complaint requests a remedy for the OKC Partnership's benefit and alleges injuries specific to the OKC Partnership.  Likewise the questions presented in the final pre-trial order also allege injury to the OKC Partnership and request relief in its favor.  <u>See</u> <u>generally</u> Final Pretrial Order, Appellant's Appendix, vol. 1, p. 84-107.  USC-OK has suffered no discernable separate harm.  Accordingly, this suit, although not captioned as a derivative action, is pleaded as a derivative action brought for the benefit of the OKC Partnership.  <u>Cf.</u> <u>United States Cellular Inv. Co. v. Bell Atlantic Mobile Sys. Inc.</u>, 677 A.2d 497 (Del. 1996) (action on nearly identical contract brought as a derivative suit).

Because this suit is derivative, the OKC Partnership is the real party in interest. <u>See</u> Fed. R. Civ. P. 17(a).  A federal court sitting in diversity must apply the law of the forum state, including its choice-of-law rules, to all substantive issues.  <u>See</u> <u>Rocky Mountain Helicopters, Inc. v. Bell Helicopter Textron, Inc.</u>, 24 F.3d 125, 128 (10th Cir. 1994).  Because Oklahoma is the forum state, its law

designates whether the OKC Partnership is the real party in interest in this diversity suit. See K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1153 (10th Cir. 1985). "If an incorporated or unincorporated association has capacity to sue or be sued as provided under Rule 17(b), it is considered the real party in interest for purposes of enforcing any right it has as an entity." 6A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure §1552, at 394 (1990). A limited partnership or unincorporated association has the capacity to sue or be sued in Oklahoma. See Okla. Stat. Ann. tit. 12, § 2017B (West 1993). Thus, OKC Partnership is the real party in interest in this suit. See Singer v. Singer, 634 P.2d 766, 769-70 (Okla. Ct. App. 1981). Notably, the Fifth Circuit has stated that a limited partnership is the real party in interest to a derivative suit seeking relief for an alleged breach of fiduciary duty, see Bankston v. Burch, 27 F.3d 164, 167 (5th Cir. 1994), and we have drawn a like conclusion in the corporate context, see Nunn v. Chemical Waste Mgt., Inc., 856 F.2d 1464, 1470 (10th Cir. 1988).

Moreover, the OKC Partnership, like any partnership in a derivative suit, is a necessary party. Three circuits have arrived at this conclusion in the limited partnership context. See HB General Corp. v. Manchester Partners, L.P., 95 F.3d 1185, 1190 (3d Cir. 1996); Bankston, 27 F.3d at 167-68; Buckley v. Control Data Corp., 923 F.2d 96, 98 (8th Cir. 1991). Also, the U.S. Supreme Court has so

concluded in the corporate context.  See Ross v. Bernhard, 396 U.S. 531, 538 (1970).  Save possibly for the accounting, the OKC Partnership is the only entity directly interested in the relief sought by USC-OK, which itself has only a derivative interest.  As we shall see, resolution of the issues in this suit without the OKC Partnership will impair or impede its ability to protect its interests.  See Fed. R. Civ. P. 19(a)(2), (2)(I).

The matter of a party's absence can be raised at any time and should be raised by a court sua sponte.  See State Farm Mut. Auto. Ins. Co. v. Mid-Continent Cas. Co., 518 F.2d 292, 294 (10th Cir. 1975).  We must protect the interests of an absent necessary party, and have a duty to ensure that the best possible parties litigate this suit.  Joining the OKC Partnership, however, would destroy diversity and strip the court of subject matter jurisdiction over this suit.  See Carden v. Arkoma Assoc., 494 U.S. 185, 195-96 (1990) (holding a partnership is a citizen of each state of which the general or a limited partner is a citizen).  Thus, we must determine if the OKC Partnership is an indispensable party under Rule 19(b).  If it is, we must dismiss this suit for non-joinder.

To determine whether the OKC Partnership is an indispensable party to this matter, Fed. R. Civ. P. 19(b) requires us to examine (1) the extent to which a judgment rendered in the party's absence might be prejudicial to the party; (2) the extent to which, by protective provisions in the judgment, by shaping of relief, or

other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the party's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

Applying these factors, two of our sister circuits and one of our district courts have come to the conclusion that an absent partnership is an indispensable party in a derivative suit. See Bankston, 27 F.3d at 167-68; Buckley, 923 F.2d at 98; New York Life Insurance Co. v. Ramco Holding Corp. 938 F. Supp. 754 (N.D. Okla. 1996). But cf. HB General Corp., 95 F.3d at 1190 (holding that a partnership was not an indispensable party to an action brought solely for declaratory relief against a limited partner and where every partner was a party to the lawsuit). Moreover, the Supreme Court has held that a corporation (which is treated identically with respect to derivative suits in Delaware, see Litman, 611 A.2d at 15) is an indispensable party to a derivative suit. See Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 520-523 (1947). Applying these factors to our case leads to a like result.

First, the court's entry of a judgment and remedy in this suit prejudices the OKC Partnership. SWBS breached the fiduciary duties it owed to the OKC Partnership, and the OKC Partnership is the only entity directly interested in the money remedy sought in this litigation. The damage award, however, represents only 14.6% of the gains SWBS realized from its wrongful conduct because

USC-OK owns only 14.6% of the OKC Partnership. Not only does the court's judgment permit SWBS to wrongfully retain the balance of the ill-gotten proceeds (at least the balance in excess of SWBS's ownership interest in the OKC Partnership), but the judgment effectively deprives the remaining limited partners, namely Chickasaw Telephone and Pottawomie Telephone, whose interests total 23% of the OKC Partnership, of their share of the proceeds.

Second, the court makes no attempt to shape the judgment to ameliorate or avoid the prejudice to the OKC Partnership. Again, the judgment accounts for only 14.6% of the damage caused by SWBS's conduct. Moreover, the court cannot award the absent OKC Partnership the remaining measure of damages via a constructive trust because the Partnership is nondiverse. While the OKC Partnership may not be bound by the judgment in this suit, see Martin v. Wilks, 490 U.S. 755 (1989), it would be difficult if not impossible for it to protect its own interest because at least five years have elapsed since the accrual of the claims for breach of fiduciary duty, putting the claims outside many limitations periods. See, e.g., Okla. Stat. Ann. tit. 12, § 95 (West 1988).

Third, the court's judgment is not adequate to protect the OKC Partnership's interest. Although SWBS owns approximately 62% in the OKC Partnership, and it would have been entitled to a share of the profits in the absence of the breach, the judgment nevertheless fails to account for 85.4% of the

- 8 -

monies wrongfully diverted by SWBS. A derivative action must not proceed where the named plaintiff does not "fairly and adequately represent the interests" of the members of the limited partnership. See Fed. R. Civ. P. 23.1.

Fourth, USC-OK or, more accurately, the OKC Partnership, will have an adequate remedy if this suit is dismissed for nonjoinder. The applicable statute of limitations is ultimately a question of the choice-of-law rules of the forum state. See Yoder v. Honeywell, Inc., 104 F.3d 1215, 1224-25 (10th Cir.), petition for cert. filed, 65 U.S.L.W. 3799 (May 20, 1997). Almost certainly either Oklahoma or Delaware law governs, see Restatement (Second) of Conflict of Laws §§ 142-43, 186-88, 292-95 (1971), and both Delaware and Oklahoma law contain savings provisions which would allow USC-OK or the OKC Partnership to refile this suit under the laws of those states. See Del. Code Ann. tit. 10, § 8118 (1996); Okla. Stat. Ann. tit. 12, § 100 (West 1988). Nothing indicates that an adequate remedy is not available in a state court applying the Delaware or Oklahoma savings provisions.

In addition to Rule 19(b)'s standards, the limited partnership's legal existence, independent from that of its partners, see, e.g., W.B. Johnston Grain Co. v. Self, 344 P.2d 653, 654 (Okla. 1959); Litman, 611 A.2d at 15, weighs against entering a judgment in the absence of the OKC Partnership. A corporation is a similar artificial entity independent of its shareholders, and even

a person owning all of a corporation's shares cannot represent the corporation's interest in a lawsuit. <u>See</u> 1 William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 25.1 (perm. ed. rev. vol. 1990). Additionally, a limited partner, like a corporate shareholder, enjoys limited liability because of the legal form of the limited partnership and its separate legal existence.

USC-OK would doubtlessly be quick to rely on this limited liability, and this court likely would be equally quick to recognize it, <u>see, e.g.</u>, <u>Robertson v. Roy L. Morgan Prod. Co.</u>, 411 F.2d 1041, 1043 (10th Cir. 1969) (discussing limited circumstances under which a court will disregard the corporate form under Oklahoma law), if faced with the appropriate prospect of liability. Further, USC-OK demands without justification that it be paid all the monies SWBS accrued from its breach–to the exclusion of both the OKC Partnership itself and USC-OK's other partners, regardless of the fact that USC-OK owns only a portion of the OKC Partnership. In exchange for a limited partner's limited liability shield, however, the limited partner surrenders its right to bring in its own name claims for damages to the limited partnership itself. USC-OK should not be so free to disregard, and the court so eager to approve, the form of business under which it and its partners chose to organize because the parties prefer to be in federal court.

In summary, the OKC Partnership is an indispensable party to this suit. The court's judgment fails to protect its interests; the current parties do not represent its interests; and the OKC Partnership cannot protect its own interests because of the time lapse since the accrual of the causes of action. Moreover, the court's judgment imprudently allows USC-OK to escape the consequences of its choice of business organization.

Finally, I sense at least an unspoken reluctance on the part of this court to dismiss this case in light of the considerable time and effort which the district court devoted to it as evidenced by that court's extensive findings of fact and conclusions of law. Although the initial pleadings in this case establish that all claims, except for the accounting claim, were derivative, nothing on or off the record indicates that the procedural rules for this type of derivative action, e.g., Fed. R. Civ. P. 23.1; Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 527-34 (1984), were complied with even minimally. The difficulties involved with fashioning and administering a remedy in this case should have at least raised a question about the absence of OKC Partnership and prompted a Rule 19 analysis. It is difficult to believe that these issues did not occur to the attorneys in this case who come from large firms in Oklahoma and Washington, D.C.

For the foregoing reasons, I would remand this matter to the district court with instructions to dismiss for failure to join an indispensable party and want of subject matter jurisdiction.  Accordingly, I dissent.