**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 14 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARION D. MANDEVILLE,

     Plaintiff - Appellee,

v.

QUINSTAR CORPORATION,

     Defendant - Appellant.

No. 02-3267
(D.C. No. 98-1408-MLB)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **LUCERO,** and **O'BRIEN**, Circuit Judges.

---

     Marion Mandeville, a former employee of Quinstar Corporation

("Quinstar"), brought suit against Quinstar and its sole shareholder, Ronald

Filbrun, after Quinstar terminated his employment. Filbrun moved for and

obtained a Rule 56 Summary judgment dismissing him from the litigation. Even

though he was dismissed as a party, Filbrun was present at the trials, presumably

because he was the principal officer of the corporation as well as a witness. A

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

jury later found in favor of Mandeville on a breach of contract claim and concluded that Quinstar's corporate veil should be pierced. Quinstar appeals various decisions of the district court related to this action. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **AFFIRM**.

## I

For purposes of context, we summarily state the background facts. Mandeville was terminated from Quinstar following a struggle over various company policies. As a result of his termination, in the latter part of 1998, Mandeville brought this action in federal district court in Kansas. He alleged violations of Title VII, the Employee Retirement Income Security Act ("ERISA"), and a common law breach of contract claim. The district court granted summary judgment for Quinstar on Mandeville's ERISA claim but allowed the remaining claims to proceed to trial.

Prior to trial, Mandeville asked the district court to allow piercing of the corporate veil of Quinstar to recover against Filbrun, Quinstar's sole shareholder. The court denied the motion and granted summary judgment in Filbrun's favor on all claims; however, it concluded that if Mandeville successfully obtained judgment against Quinstar, it would likely schedule bifurcated proceedings to determine the propriety of piercing the corporate veil on an alter ego theory.

Mandeville's claims against Quinstar were presented to a jury. On

2

December 7, 2001, the jury returned its verdict, ruling in Quinstar's favor on the Title VII claim but concluding that Quinstar had breached a salary continuation agreement between Mandeville and Quinstar and awarded damages in the sum of $169,369.20 to Mandeville. The district court then set a second trial for consideration of the alter-ego claim.

Several Quinstar motions followed, and all motions to dismiss Mandeville's action in the second trial were denied. The matter was tried to a jury on June 18, 2002; the jury concluded that Quinstar Corporation was merely an instrumentality used to conduct the personal business of Ronald Filbrun and that the corporate veil should be pierced. As previously stated, Filbrun was no longer a party to the litigation at the time of the jury trial. The final judgment in favor of Mandeville pierced Quinstar's corporate veil, but does not mention Filbrun. There was no attempt by Mandeville to amend the judgment or to obtain relief from interim judgments, the final judgment or other orders. Fed. R. Civ. P. 59 and 60 (2003).

Before us, Quinstar makes the following claims of district court error: (1) abuse of discretion in deciding to bifurcate the proceeding; (2) denial of its motions to dismiss; (3) permitting the second trial to proceed without an amended pretrial report; (4) improper jury instructions given at the second trial; and (5) the jury's verdict in the second trial was not supported by the evidence. Also before us are two outstanding motions: one to strike portions of Mandeville's

3

supplemental appendix to the extent that it includes materials not before the district court, the other asking us to impose sanctions against Mandeville's counsel for alleged misrepresentation of the facts at oral argument.

**A**

We review a district court's decision to bifurcate a trial for abuse of discretion. Anaeme v. Diagnostek, Inc., 164 F.3d 1275, 1285 (10th Cir. 1999). "District courts have broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused." Id. (quotation omitted). Bifurcation is appropriate when it is done "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed. R. Civ. P. 42(b).

Quinstar bases its claim of abuse of discretion on the fact that as a result of the bifurcation, it was forced to defend itself against the prejudice resulting from the jury's knowledge that a judgment previously had been issued against Quinstar. Further, Quinstar argues, the second trial could not have been intended to promote judicial economy given that the district court's decision delayed the proceedings for an additional six months.

We have explained that it is not an abuse of discretion to bifurcate a trial if the interests of judicial expedition and economy "favor separation of issues and the issues are clearly separable." Angelo v. Armstrong World Indus. Inc., 11 F.3d

4

957, 964 (10th Cir. 1993) (citation omitted).  In the instant case, a trial on the issue of piercing the corporate veil would have been unnecessary absent a ruling in Mandeville's favor on the breach of contract or Title VII claim.  Thus, the decision to bifurcate advanced judicial economy.  Moreover, the issues were clearly separable.  The ability to collect a judgment by piercing the corporate veil became relevant only when Mandeville was successful on one of the underlying claims.  Because the issues before the district court were logically separable, and because bifurcation promoted judicial economy, we conclude that the district court did not abuse its discretion in bifurcating the trial.

**B**

Turning to Quinstar's claim that the district court erroneously denied its motions to dismiss Mandeville's action in the second trial, we review dispositive motions, including motions to dismiss, de novo.  Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1125 (10th Cir. 1994).  Where, however, a motion to dismiss is brought pursuant to Fed. R. Civ. P. 41(b) as a requested sanction, we review the district court's decision regarding sanctions for an abuse of discretion.  Conkle v. Potter, 352 F.3d 1333, 1337 (10th Cir. 2003).

**1**

On April 2, 2002, Quinstar filed a sanctions motion to dismiss under Rule 41(b) claiming that "Mandeville failed to amend the pretrial order . . . , failed to

5

abide by the District Court's orders, and failed to ever join or otherwise name Filbrun as a party to the 'new' claims." (Aplt. App. Vol. I at 236.) Mandeville did not file a timely response. Despite the lack of opposition, the district court denied the motion, deciding that dismissal was too harsh a sanction. Instead, the district court imposed discovery restrictions on Mandeville. Quinstar argues on appeal that the district court's failure to sanction Mandeville by dismissing his claims constitutes an abuse of discretion.

Rule 41(b) permits the trial court to dismiss an action or claim as a sanction, provided that the trial court first consider the following factors: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process . . . ; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." Ehrenhaus v. Reynolds, 965 F.2d 916, 921 (10th Cir. 1992) (quotations omitted).

While conceding that "dismissal is arguably appropriate," Mandeville v. Quinstar, No. 98-1408-MLB, at 6 (D. Kan. Apr. 30, 2002), the district court nonetheless declined to use dismissal as a sanction. In a thorough analysis, the district court considered the five Ehrenhaus factors; although it found that the first two factors justified dismissal, it concluded that the remaining three factors mitigated against dismissal. Specifically, the district court concluded that

6

Mandeville was a blameless victim of his attorney's misbehavior, that Mandeville was given no warning that his action might be dismissed, and that discovery sanctions were more appropriate than dismissal under the circumstances.

On appeal, Quinstar argues that the district court improperly applied the three Ehrenhaus factors upon which it based its decision. Although we agree with Quinstar that the district court's first justification is foreclosed by Link v. Wabash Railroad Co., 370 U.S. 626, 633 (1962) (finding "no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client"), we nonetheless conclude that the district court's consideration of the absence of a warning to Mandeville and the efficacy of lesser sanctions were within its discretion. Even if dismissal may have been permissible in the instant case, it was not required by Ehrenhaus, and it was well within the district court's discretion to impose whatever sanctions, if any, it thought appropriate to deter future delays. We find nothing in these circumstances that would cause us to disturb the district court's exercise of discretion.

## 2

On May 15, 2002, Quinstar filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss on the ground that Mandeville's assertion of piercing the corporate veil failed to state a claim on which relief could be granted. According to Mandeville,

the parties participated in a telephone conference with the court two days after Quinstar submitted the motion to dismiss. During the telephone conference, the court ruled on various pending motions and ordered the case to proceed to a jury trial on June 18, 2002, thus implicitly denying the second motion to dismiss. Quinstar subsequently filed a supplemental motion to dismiss, which was received by Mandeville's counsel on May 21, 2002. Mandeville's counsel did not file a response to the supplemental motion to dismiss until eight days after it was due. Despite Mandeville's untimely response, the district court denied the motion to dismiss in a blanket order dated June 14, 2002. Because this motion was premised on a failure to state a claim, rather than as a sanction, we review the district court's denial of this motion to dismiss de novo. See Brever, 40 F.3d at 1125.

Quinstar argues that Mandeville's failure to respond to the motion to dismiss in a timely fashion should have resulted in dismissal of the action. Kansas rules allow a party twenty days to respond to a motion to dismiss. D. Kan. Rule 6.1(e)(2). In the event a party fails to respond, the rules provide that the party has waived his right to file a response except upon a showing of excusable neglect. D. Kan. Rule 7.4. Absent a showing of excusable neglect, the motion "will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." D. Kan. Rule 7.4. On appeal, Quinstar argues

that the district court erred in not properly applying Rule 7.4 to dismiss the instant action.

The Supreme Court has explained that excusable neglect "is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." Pioneer Investment Servs. Co. v. Brunswick Assoc. Ltd. Partnership, 507 U.S. 380, 392 (1993) (quotations omitted). When considering whether Mandeville's circumstances meet the excusable neglect standard, we must take into account all relevant circumstances surrounding the omission, including: (1) the danger of prejudice to Quinstar; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within Mandeville's control; and (4) whether Mandeville acted in good faith. Id. at 395.

Although the reason for the eight-day delay was within the control of Mandeville's counsel, there is no indication that it prejudiced Quinstar, materially delayed proceedings, or that Mandeville acted in bad faith. Considering all relevant circumstances, and that the delay was relatively short, we conclude that the district court's decision to decline to grant the motion to dismiss pursuant to Rule 7.4 does not constitute reversible legal error.

## C

This brings us to Quinstar's claim that the district court abused its

9

discretion by permitting the second trial to proceed without a finalized pretrial order prepared by the parties. We first note that the district court prepared a pretrial order because the two parties were unable to submit one jointly. The district court's pretrial order was entered on the eve of commencement of the second trial. Quinstar asserts on appeal that it was prejudiced because it saw the pretrial order for the first time less than twenty-four hours prior to trial. Quinstar also asserts that it was prejudiced by the high attorney fees it accrued in its continuous efforts to arrive at a pretrial order.

Scheduling decisions are within the adjudicator's judicial capacity and discretion. See United States v. Carrigan, 804 F.2d 599, 603 (10th Cir. 1986) (explaining that a district court has "inherent power to control and supervise its own proceedings"). We review a district court's exercise of this inherent power under an abuse of discretion standard, and appellate deference is particularly appropriate where the decision implicates the district court's fundamental control over the trial process. Thweatt v. Ontko, 814 F.2d 1466, 1470 (10th Cir. 1987) (finding that "the trial court's decision to carry out its preset court schedule did not constitute an abuse of discretion").

Considering that the district court asked the parties to submit a joint pretrial order, and that they failed to do so, we cannot conclude that the district court abused its discretion by unilaterally drafting a pretrial order. It was well

10

within the district court's discretion to take measures to ensure that this otherwise lengthy matter progressed as scheduled.

## D

With respect to the jury instructions presented at the second trial, Quinstar challenges Instruction Numbers 4 and 6. We review the district court's decision to include or exclude particular jury instructions for an abuse of discretion. United States v. Wolny, 133 F.3d 758, 765 (10th Cir. 1998). However, we must review de novo whether the instructions "fairly, adequately, and correctly state the governing law and provide the jury with an ample understanding of the applicable principles of law and factual issues confronting them." United States v. Denny, 939 F.2d 1449, 1454 (10th Cir. 1991). Reversal is proper if, upon examination of the instructions as a whole, a "deficient jury instruction is prejudicial." Coleman v. B-G Maint. Mgmt. of Colo., Inc., 108 F.3d 1199, 1202 (10th Cir. 1997) (citations omitted).

## 1

Quinstar argues that Instruction No. 4 fails to state the law accurately. Instruction No. 4 states:

> To succeed on plaintiff's "alter ego" claim, plaintiff must establish the following essential elements:
>
> FIRST:    Ronald Filbrun knowingly and intentionally used Quinstar Corporation as an instrumentality to conduct his personal business; AND

11

SECOND: Ronald Filbrun's use of Quinstar Corporation in the aforementioned manner caused a fraud or injustice upon plaintiff.

Plaintiff has the burden of proving both of these essential elements by a preponderance of the evidence. If plaintiff fails to establish either of these elements, you are required to return a verdict in favor of Quinstar.

(Aplt. App. Vol. I, at 322.)

As a preliminary matter, we note that Quinstar initially objected to Instruction No. 4 but ultimately withdrew its objection. Although Quinstar concedes that it withdrew its objection, it nevertheless asserts that "an objection was made on the record" and that "[t]he withdrawal of that objection was not for the purposes of waiving the right to assert an error." (Appellant's Reply Br. at 14.) To preserve the issue on appeal, Fed. R. Civ. P. 51(c) requires that a party timely object to the use of a proffered instruction in "obvious, plain, or unmistakable" terms. Reed v. Landstar Ligon, Inc., 314 F.3d 447, 452 (10th Cir. 2002) (quotations omitted). The failure to object to a proffered jury instruction limits our review to plain error, and we may reverse only where the decision to give a particular instruction is patently erroneous and would result in a fundamental injustice. Barber v. T.D. Williamson, Inc., 254 F.3d 1223, 1227 (10th Cir. 2001) (quotations omitted). Although Mandeville argues on appeal that Quinstar did not properly preserve its objection to Instruction No. 4, we need not reach this question because we conclude that Instruction No. 4 survives both plain

12

error and de novo review.

Quinstar claims that the district court's reliance on Sampson v. Hunt, 233 Kan. 572, 579 (1983), in formulating Instruction No. 4 was improper. According to Quinstar, the district court should have relied on the test contained in Boilermaker-Blacksmith National Pension Fund v. Gendron, 96 F. Supp. 2d 1202, 1217 (D. Kan. 2000). Boilermaker-Blacksmith, however, was limited to the question of piercing the corporate veil with respect to a federal ERISA claim. Id. In the instant case, Mandeville seeks to pierce the corporate veil under a state breach of contract claim. Thus, the district court correctly determined that Sampson's alter-ego analysis, which has been applied repeatedly by the Kansas Supreme Court, see, e.g., Doughty v. CSX Transp. Inc., 258 Kan. 493, 500 (1995); Dean Operations, Inc. v. One Seventy Assoc., 257 Kan. 676, 680 (1995), was the appropriate standard on which to base the jury instruction.

Under both Sampson and Boilermaker-Blacksmith, moreover, the ultimate test is fundamentally similar. Both cases inquire whether an individual used a corporation to conduct his own business, and if adherence to a corporate fiction would result in an injustice to a third party. See Sampson, 233 Kan. at 579; Boilermaker-Blacksmith, 96 F. Supp. 2d at 1217. Instruction No. 4 clearly articulates that standard. Based on the foregoing, we conclude that although the language of Instruction No. 4 may not have represented Quinstar's preferred

13

language, the district court's statement of the law was not erroneous.

**2**

As to whether the district court improperly denied Quinstar's request to exclude Instruction No. 6, we review for abuse of discretion. See Wolny, 133 F.3d at 765. Instruction No. 5 listed eight factors that the jury could consider to determine whether Filbrun used Quinstar as his alter ego. Included among these factors was "[u]ndercapitalization of a one-man corporation." (Appellant's Appendix, Volume I, at 323.) While Instruction No. 6 defined the term undercapitalization, none of the remaining seven factors were defined in the instructions. According to Quinstar, the inclusion of one definition absent all other relevant definitions resulted in an unwarranted emphasis on undercapitalization as a key factor in alter-ego analysis.

We disagree. Instruction No. 5 clearly states that there are eight factors to be considered, and that all of them need not be satisfied to find that Quinstar was the alter ego of Ronald Filbrun. The jury found that seven of the eight factors were present, including undercapitalization. Based on these jury findings, we cannot conclude that Quinstar was prejudiced by the inclusion of a definition of undercapitalization. Moreover, the other seven terms, unlike undercapitalization, are in familiar lay usage. Thus, the district court acted within its discretion in defining the word undercapitalization in order to assist lay jurors.

14

**E**

Finally, Quinstar contends that the jury's verdict in favor of Mandeville was contrary to the weight of the evidence. We must first determine whether Quinstar preserved this argument for appeal in compliance with Fed. R. Civ. P. 50.

Quinstar moved for a directed verdict at the close of Mandeville's presentation of evidence; however, it did not renew its motion for judgment as a matter of law following the adverse jury verdict. Mandeville claims that Quinstar has therefore waived the argument on appeal. We have held that when "a party fails to make a post-verdict motion for judgment as a matter of law, it is not barred from appealing the issue of the sufficiency of the evidence, at least where an appropriate motion has been made prior to the submission of the case to the jury." Cummings v. General Motors Corp., ___ F.3d ___, 2004 WL 902325, *5 (10th Cir. 2004). However, because Quinstar failed to renew its motion for judgment as a matter of law after the adverse jury verdict, we are limited in the relief we can grant: we may determine only whether Quinstar is entitled to a new trial. Id. at *6.

In considering the sufficiency of the evidence on appeal, we review the record in the light most favorable to the prevailing party to determine whether "a reasonable mind might accept [the evidence] as adequate to support a conclusion,

15

even if different conclusions also might be supported by the evidence."

Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1468 (10th Cir. 1992) (quotations

omitted).  With respect to our review of the evidence,

> it is not the function of the appeals court to reverse merely if it believes the evidence might have supported a different verdict.  If there is an evidentiary basis upon which the verdict can be supported, the jury's determinations will be left undisturbed, even where there is substantial contradictory evidence that could have supported an opposite verdict.

Id. (quotations omitted).  Upon such review of the record, we conclude that the

evidence presented at trial was sufficient to permit the jury to find in favor of

Mandeville.

## II

**AFFIRMED**.  To the extent that Mandeville's Supplemental Appendix

includes information not before the district court, Quinstar's motion to strike from

the record the drafts of the pretrial orders is **GRANTED**.  We **DENY** Quinstar's

motion to impose sanctions on Mandeville's counsel for alleged

misrepresentations at oral argument.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge

16

No. 02-3267, Mandeville v. Quinstar Corp.

**O'BRIEN,** Circuit Judge, specially concurring.

I join the Order and Judgment, but write separately only to clarify my reasons.

I am unable to identify reversible trial errors (jury instructions or sufficiency of the evidence) occurring during the "piercing the corporate veil" trial, which may have been an exercise in futility without Filbrun, the stated and obvious corporate controller, as a party. I also agree that Mandeville stated a claim for "piercing the corporate veil" sufficient to survive Quinstar's motion to dismiss (considering the posture of the case at the time it was decided.) I wonder, but express no opinion because the issue was not raised on appeal, whether Filbrun was an indispensable party. Fed. R. Civ. P. 19 (2003). Nevertheless, I am willing to leave the parties where they have left themselves—with a "piercing the corporate veil" judgment against Quinstar, but not against Filbrun.

I do not agree with Judge Kelly that the case should be reversed and remanded. I see nothing to be gained by giving Mandeville yet another opportunity to correct pleading and trial deficiencies. Concern was expressed at argument that Mandeville might be able, in collateral proceedings, to transmogrify his judgment against Quinstar into one against Filbrun. Frankly, I am at a loss to know how that might be possible.

No. 02-3267, Mandeville v. Quinstar Corp.

**KELLY,** Circuit Judge, dissenting.


I respectfully dissent because I do not believe the district court had jurisdiction to conduct a jury trial on the piercing the corporate veil claim when the object of liability under this theory (Mr. Filbrun) was no longer in the case. Given the fact that Mr. Filbrun was previously dismissed as a party, and that Mr. Mandeville obtained a monetary judgment against the corporation in the first trial, the court's judgment to pierce the corporate veil in the second trial grants no effective relief to Mr. Mandeville. The federal courts have "no power to issue advisory opinions" or "decide questions that cannot affect the rights of litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246 (1971). We have no jurisdiction to render an advisory opinion on the district court's advisory judgment about piercing the corporate veil. Accordingly, I would remand the case to the district court with instructions to vacate that portion of its judgment pertaining to that claim.

Though the district court's final judgment against Quinstar recites that judgment is entered in favor of Mr. Mandeville and against Quinstar "on the claim of 'piercing the corporate veil'" this portion of the judgment cannot impose liability upon Mr. Filbrun and it certainly does not run against the corporation. Early on, Mr. Filbrun obtained summary judgment from the district court on the

issue of his personal liability (albeit on procedural grounds).  Though the district court considered bringing him back into the lawsuit, it never did.  Indeed, at the beginning of the second trial, the district court emphasized to counsel:

> I've taken Mr. Filbrun out of this case.  I'm glad he's here and he should be here to represent the corporation, but he's not a party here so you don't need to worry yourself about that.  He's no longer a party in this case.

Aplt. Supp. App. at 3.  Mr. Mandeville did not cross-appeal from the district court's grant of summary judgment in favor of Mr. Filbrun on the issue of personal liability.  Courts have taken a dim view of imposing liability where the individual or entity that will be forced to assume the obligations of the corporation has not been a party to the proceedings.  See Nelson v. Adams USA, Inc., 529 U.S. 460, 471 (2000); Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110-111 (1969).

Nor may liability be imposed upon Mr. Filbrun based solely upon his participation in the defense of Quinstar, there also would have to be a finding, with Mr. Filbrun as a party, that the corporate nature of Quinstar should be disregarded.  See Nelson, 529 U.S. at 470-71 (fact that president and shareholder of corporation controlled the litigation would be insufficient without some finding that corporate form should be disregarded); Eagle Transp. Ltd., Inc. v. O'Connor, 470 F. Supp. 731, 733 (S.D.N.Y. 1979).  Thus, in Alman v. Danin, 801 F.2d 1, 3-5 (1st Cir. 1986), the court imposed liability on the individual

-2-

defendants for a prior judgment against the corporation only after a suit against the individuals based upon their disregard of the corporate form and a determination that such liability comported with due process given that they had controlled the earlier corporate defense.  Were the rule otherwise, personal liability would inure to shareholders of closely held corporations whenever they controlled litigation, regardless of whether corporate formalities had been followed.  That is not the law.

In its order granting summary judgment as to Mr. Filbrun's non-liability, the district court effectively held that such a remedy was unavailable against Mr. Filbrun.  Principles of res judicata and the prohibition against claim splitting would preclude Mr. Mandeville from seeking to enforce the judgment against Mr. Filbrun upon a theory of piercing the corporate veil and control of Quinstar's defense.  See King v. Am. Family Ins. Co., 874 P.2d 691, 693-94 (Kan. Ct. App. 1994) (discussing prohibition against claim splitting).  At a minimum, Mr. Mandeville cannot repair to state court and relitigate the piercing claim against Mr. Filbrun after having lost it in federal court.

It is axiomatic that piercing the corporate veil involves imposing liability on an individual by disregarding the corporate form.  United States v. Van Diviner, 822 F.2d 960, 964-65 (10th Cir. 1987); Sampson v. Hunt, 665 P.2d 743, 751-52 (Kan. 1983).  Given that Mr. Filbrun was an essential party to the

piercing claim, the court was in error to proceed without him. See U.S. Cellular Inv. Co. of Okla. City, Inc. v. Southwestern Bell, 124 F.3d 180, 182 (10th Cir. 1997) ("We must protect the interests of an absent necessary party, and have a duty to ensure that the best possible parties litigate this suit.").

Additionally, given that Mr. Filbrun was not a party to the second trial, and given that a prior judgment had already been entered against the corporation, no live case or controversy existed between the parties before the court. Quinstar has never explained how it might be adversely affected by a decision holding Mr. Filbrun liable. Like Judge O'Brien, I am at a loss to know how it would be possible for Mr. Mandeville to initiate collateral proceedings and transform his piercing judgment against Quinstar into one against Mr. Filbrun. Regardless, speculation about Mr. Mandeville's potential use of the piercing judgment in a future action against Mr. Filbrun does not create a proper case or controversy between the parties before us. See Gonzales v. Gorsuch, 688 F.2d 1263, 1267 (9th Cir. 1982) (noting that where the wrong parties are before the court, the court is unable to effectively redress the plaintiff's injury). Clearly, the court's piercing judgment against Quinstar did not and could not afford any effective relief on this theory to Mr. Mandeville in this case, and neither can we.