HARTFORD FIRE INSURANCE COMPANY, a Connecticut Corporation, Plaintiff in Error,

v.

C. A. MARTIN, Defendant in Error.

No. 39896.

Supreme Court of Oklahoma.

Feb. 5, 1963.

Rehearing Denied March 26, 1963.

Second Petition for Rehearing Denied May 14, 1963.

Clarence P. Green, Oklahoma City, for plaintiff in error.

James M. Lee, and Jack J. Ferguson, Tulsa, for defendant in error.

BLACKBIRD, Chief Justice.

On August 14th, 1959, plaintiff in error, hereinafter referred to as the "insurer", issued to defendant in error, hereinafter referred to as the "insured", a policy of so-called "Yacht" insurance in the amount of $3500.00 on an inboard 20-foot Dodgecraft boat the insured owned. Thereafter, on or about October 1st of the same year, the boat sank during a storm on Fort Gibson Lake. Thereafter, the insurer rejected the insured's claim of loss under the policy, and, when he brought this suit to recover for said loss, the insurer defended on the ground that the insured had misrepresented the

facts concerning the boat, and it tendered to him the premium he had paid thereon.

Upon trial by a jury, a verdict for $3500.-00 was returned in favor of the insured, and judgment was entered accordingly. The insurer's present appeal was thereafter perfected.

To understand the insurer's argument for reversal of the trial court's judgment, it may be noted that the insured's alleged misrepresentations, relied upon by the insurer in defending the action, appear on the printed form introduced in evidence as Defendant's Exhibit 1, entitled "Yacht Insurance Application". For the purpose of writing into it, the model year of the boat, the application form had a printed line which commenced as follows: "Year built 19.....". In the blank space thus indicated, the figures "55" were written into the completed application. In the blank space on the application's line 11, after the words "Purchase price $....", there was typed the amount: "3000.00," and, in the blank following: "Present market value (including all equipment) $....", there was typed into the printed form the amount: "3500.-00". Below all such information, the application bore the insured's signature.

At the trial, the insurer took the position that the quoted information typed into the application, as above indicated, constituted misrepresentations on the part of the insured, and that they were sufficient to invalidate the policy.

Under the insurer's Proposition 1 for reversal, it contends that such misrepresentations void such a policy where the insurer is induced to issue the policy in reliance thereon, and would not have issued it, if apprised of the truth. The insured counters with a denial of responsibility for the above described alleged misrepresentations, and, in substance, argues that the knowledge of the insurance agent who sold him the policy was such that the present case cannot fall within the rule relied upon by the insured.

The evidence introduced at the trial reasonably tends to prove that the first steps toward obtaining the policy were taken when the insured, who lived in a trailer house near Pryor, Oklahoma, after previously purchasing the boat and a trailer for it, and parking said trailer, with the boat on it, alongside his trailer house in order to make certain repairs and improvements on it, went to the office of his acquaintance Clifford Henry (who was engaged in selling insurance at Pryor under the name of "The Henry Agency") on or about August 1, 1959. According to the testimony, when the insured expressed to Mr. Henry (who had previously sold him another kind of insurance) his desire to insure the boat, he was told that said agency did not write insurance on inboard boats, but that Henry could get such insurance "through" the insurer company; that Mr. Henry also told the insured that he would "send in" for such a policy, or an application for one, and when it arrived he would come out and look over the boat, and help him fill out the application; that thereafter, when the witness returned home one evening from a job in Tulsa, he found Henry at his home with such a policy application; that Mr. Henry left the application with the insured to fill out; that his wife told the insured that Henry said he had come out to look over the boat, and that, previous to the witness's arrival home, she and Henry had been discussing the insurance; that thereafter, the insured and his wife read and discussed the application, and were able to supply some of the information called for thereon, but that "there were so many things on there" they didn't understand, that he took the application back to Mr. Henry's office. According to the undisputed testimony, after the insured arrived at said office, he and Mr. Henry discussed the information to be inserted in the application's blanks and then Henry, or a typist in his office, filled them in on a typewriter there. According to the insured's undisputed testimony, he told Henry at that time that he wanted only "$2500 worth" of insurance on the boat, and he explained " * * * how much labor and everything" he had in it. The insured further testified that, during

the course of the discussion in the insurance agency office, he told Henry that the boat had a 1955 Model motor, but added: "* * * as to the hull, I don't know exactly the make or the year." Testimony was also elicited from the insured as follows:

"Q When you get down to this or that question, would he ask you and put down whatever you said, or would you all talk about it?

"A We talked about it a little while.

"Q When you got down here on Line #11, Defendant's Exhibit #1, on the second question asked, his purchase price, what did you all say? What did you tell him, and what did he say?

"A He asked me how much the boat cost?

"Q What did you tell him?

"A I explained to Mr. Henry how much that we had in the boat, and I believe at that time it come to somewhere around $2500.00 or $2600.00, and that is the reason I asked for $2500.00 worth of insurance.

"Q And what did he answer to you?

"A Well, * * * he told me that he saw the boat, which he had, and he said 'We should have at least $3500.00', because he knew a guy that had offered me $3200.00 for it, as well as $2800.00 for it, and he said 'We should have at least $3500.00 worth of insurance, on this boat.' And he said, 'I have written and found out how they classify these boats', and he said, 'I would be qualified to say that it is worth $3500.00.' He said, 'You should have $3500.00 worth of insurance on it.' And I said, 'Mr. Henry, I come down here with the intentions of putting $2500.00 worth of insurance on the boat, and I got $100.-00 with me, 'which he told me it would be.' He said, 'Well, that is alright, you can pay another $47.00 sometime later on."

While Mr. Henry was on the witness stand, he testified that, though he represented the insurer, he did not write "Marine Insurance"; that such insurance "had to be written on the approval of the, I would say, through the Marine Department of the Hartford Fire Insurance Company." The witness admitted that the insured's application was originally made for only $2500.00 insurance on the boat. He further testified, in substance, that the insured represented to him that when the repairs and improvements he was then (in the process of) making on the boat, were completed, he *would have* $3500.00 invested in it. Mr. Henry's testimony reasonably tends to show that when it was originally filled out and signed, the application was for a policy in the amount of only $2500.00, with the $3500.00 (the witness testified the insured represented he *would eventually have invested* in the boat) being inserted in the blank following the printed words: "Present market value (including all equipment)." Mr. Henry's testimony was to the further effect, however, that "when the application went in that way", it was returned by the insurer with instructions that the policy could not be written for that amount. The reasonable inference from one portion of Mr. Henry's testimony is that he then, for the first time, learned that the insurer writes Marine Insurance only for 100 percent of the *purchase price* of the boat, or article insured. At another point in his testimony, however, this witness testified that "* * * (the boat) had to be insured for the full amount of the $3500.00." (The *purchase price* shown on the application is $3000.00. Estimated cost of equipment acquired since purchase of boat is set forth as: "$800"). According to Mr. Henry's testimony, when the application, as originally made out, was returned "* * * we had to get permission from Mr. Martin to insure it for the full amount of $3500.00."

When the above testimony is considered in the light of the fact that the instrument introduced in evidence, as the sole and only application for the policy, is dated the same date as the policy (August 14, 1959) even though it bears a stamp indicating it was not

received in the insurer's Marine Department until three days later (August 17, 1959), several questions arise that are not clearly answered by the evidence. Despite this indication that the agent, Mr. Henry, may have issued the policy and on the same date it was applied for, Mr. Todd, a special agent for the insurer, testified that Mr. Henry, as the insurer's local agent had no duties in connection with the issuance of policies like the subject one, except to take applications therefor, and mail them in to the insurer's underwriters for evaluation, and, on the basis of such applications, only its underwriting department has authority to bind the insurer in issuing policies. He also testified that the insurer does not expect agents to inspect boats. In this connection, Mr. Henry was interrogated on cross examination as follows:

"Q Did your company ask you to see it (the boat)?

"A They asked that—no, I don't know that they ever asked me to see it, that is, I believe there was going to be an inspection made of the boat, and before it was done, the boat sank.

"Q Oh, you issued the policy but you had in mind to go ahead and inspect it later on?

"A No, I am not supposed to make an inspection. The agent don't made the inspection of the boat."

Mr. Henry then denied that he had any opportunity to inspect the boat, but he admitted that he had been to the insured's trailer house on various occasions; and the insured elicited testimony from another witness that: " * * * You couldn't go in the trailer without seeing the boat."

While it was established at the trial that the $3000.00 inserted in the policy application as the boat's "Purchase Price" was a misrepresentation, and that the insured may have had little, if any, more than $2500.00, or as little as $2166.00 (in money and a traded-in auto) invested in the boat, testimony introduced on his behalf tended to show that he had refused offers to purchase the boat for more than either of these amounts. The evidence further showed that he and his wife, some of his employees, and even an uncle had worked many hours on improvements to the boat after the insured's purchase of it. The evidence does not establish the money value of their labor, or the amount it enhanced the value of the boat. In this connection, the evidence does not definitely establish the market value of the boat at the time the application for the policy was made, or that this value was more, or less, than the $3500.00 represented on the application—or, in other words—that said figure was a misrepresentation.

A defense such as the insurer relies upon in this case entails the burden of proving both that the representations the insured made, in applying for the policy, were false, and that said insurer relied upon them in issuing the policy. Allied Reserve Ins. Co. v. Pierson, Okl., 357 P.2d 205, and authorities therein cited. It is also an established rule in this jurisdiction that where the agent of an insurance company is given authority to take applications for the company's policies, knowledge of material facts, acquired by him in doing so, is imputed to said company. See Atlas Life Ins. Co. v. Eastman, Okl., 320 P.2d 397, and Atlas Life Ins. Co. v. Sullivan, 172 Okl. 595, 52 P.2d 28. In view of the cited imputation to the insurer of the knowledge acquired by its agent, Henry, concerning the material facts about the subject boat, and the absence of proof that Henry was deceived in respect to any such fact relied upon in the issuance of the policy, and in further view of other testimony tending to show the same facts that were sought to be established by said offer, we think the error of the trial court, if any, in rejecting the insurer's offer to prove by its special agent, Todd, the rules and procedure it follows in issuing policies like the one involved, was harmless. Although at one point in his testimony, Mr. Henry testified that the figure of $3000.00, shown on the application as the purchase price of the boat, was given to him by the insured, the insurer's offer of proof did not mention "purchase price" as a factor in the

evaluation of the application. According to the offer, the important consideration in the insurer's granting, or rejection, of such an application is the "value" of the boat "* * * in relation to the insurance * * *" applied for. The foregoing disposes of the argument advanced by the insurer under its sub-proposition "A".

Under its sub-proposition "B", the insurer contends that the trial court's instruction No. 3 erroneously placed the burden upon it of proving that the insured's alleged misrepresentations were material in other respects than from the standpoint of inducing the insurer to issue the policy, that the insured was aware of their falsity, and that the insurer was injured thereby. We think the insurer's argument embraces an unwarranted interpretation of the instruction's statement as to materiality. Be that as it may, however, in view of the failure of the insurer to demonstrate that the insured made any misrepresentations, upon which it could justifiably rely in issuing the subject policy, we think the giving of this instruction, if error, was harmless. Under its sub-proposition "C", the insurer complains of the trial court's refusal to give its requested instruction No. 3. This instruction would have told the jury, among other things, that the law requires a person obtaining insurance of the type involved herein, to truthfully disclose: "* * * every material fact concerning the age, description, serviceability, and value of the boat to be insured * * *", and that "If such facts are not truthfully disclosed, the insurance contract, although issued by the insurance company and paid for by the person obtaining it, never becomes binding." Counsel for the insurer does not specifically cite any authority to support the giving of such an instruction in a case like this, and we think it contains factors that would have rendered its giving in the present case erroneous. For instance, it will be noted that the requested instruction requires the insured's disclosure of "every material fact" concerning the boat's age, description, and serviceability, but the evidence fails to disclose that the boat's "serviceability", as such, was a material consideration in the issuance of the policy. We think the giving of the insurer's Requested Instruction No. 3 would have injected an element into the jury's consideration of the case that was immaterial, and would probably have proved confusing. In view of the foregoing, we are of the opinion that the trial court committed no error in refusing the subject requested instruction.

As we have found the alleged errors urged in this appeal insufficient for reversal of the trial court's judgment, said judgment is hereby affirmed.

HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, IRWIN and BERRY, JJ., concur.

WELCH and JACKSON, JJ., concur in result.