**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 10 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KENNETH McQUAY,

    Plaintiff-Appellee/
Cross-Appellant,

v.

PENN-AMERICA INSURANCE
COMPANY, a foreign insurer,

    Defendant-Appellant/
Cross-Appellee.

Nos. 02-5112/02-5124

(D.C. No. 01-CV-176-EA )
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **BALDOCK**, and **KELLY**, Circuit Judges.

In August 2000, a fire destroyed a tavern located near Sperry, Oklahoma.

Plaintiff-insured filed a proof of loss for the proceeds of the insurance policy

covering the tavern. Defendant-insurer denied Plaintiff's claim. Plaintiff filed

suit alleging breach of insurance contract and bad faith. The case proceeded to

trial and the jury returned a verdict in favor of (1) Plaintiff on the breach of

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

contract claim, and (2) Defendant on the bad faith claim. Both Plaintiff and Defendant appeal the district court's denial of their respective post-trial motions. We have jurisdiction under 28 U.S.C. § 1291, and affirm.

I.

KC's Steakhouse, LLC ("KC's LLC") was a restaurant-tavern located near Sperry, Oklahoma. Plaintiff Kenneth McQuay ("McQuay"), his brother Larry McQuay, and wife Catherine Sandridge, each owned a one-third interest in KC's LLC. On March 5, 1999, KC's LLC obtained the tavern, its contents, and the property it was located on (collectively "tavern") by general warranty deed. That same day, KC's LLC, McQuay and his brother obtained a mortgage on the tavern from Exchange Bank of Skiatook ("Exchange Bank"). McQuay personally paid all the mortgage payments.

In February 2000, McQuay sought insurance for the tavern from Defendant Penn-America Insurance Company ("Penn-America"). McQuay informed Penn-America's insurance agent, Roberta Amos, that KC's LLC was the owner of the tavern. McQuay requested that Penn-America list KC's LLC as the insured on the tavern's insurance policy.

Thereafter, Penn-America issued a commercial property insurance policy ("Policy") that mistakenly provided "Kenneth McQuay" as the only "named insured." The Policy provided: (1) $80,000 in coverage on the building in which

2

KC's LLC was located; (2) $30,000 in coverage for personal business property; and (3) up to 25% of the loss sustained for debris removal. Under the Policy, destruction of the tavern by fire was a "covered cause of loss."

On August 22, 2000, a fire destroyed the tavern. After the fire, McQuay hired Druce Wood, a public insurance adjuster, to assist him in preparing a "proof of loss" form to submit to Penn-America. Wood conducted an investigation and determined that the fire caused $99,058 in damages for loss of the building and $32,128 in damages for loss of its contents. On October 5, 2000, McQuay submitted a proof of loss form to Penn-America for $115,000. The proof of loss form only listed McQuay and Exchange Bank as having an interest in the tavern. After Penn-America rejected McQuay's proof of loss form and amended proof of loss form for failing to identify all the interest holders in the tavern, McQuay filed suit in state court alleging breach of insurance contract and bad faith on the part of Penn-America. Penn-America removed the action to federal district court on the basis of diversity jurisdiction.

After a four day trial, the jury returned a verdict in favor of (1) Penn-America on McQuay's bad faith claim, and (2) McQuay on his breach of contract claim. The jury awarded McQuay $115,000 in damages. The district court entered judgment in accordance with the jury verdict and provided that McQuay

3

should recover $115,000 plus post-judgment interest, as required by Oklahoma law.

On May 24, 2002, McQuay filed a motion to alter or amend the judgment. See Fed. R. Civ. P. 59(e). In that motion, McQuay argued the district court erred in failing to award prejudgment interest on the breach of contract damage award. The district court denied that motion and McQuay appealed. On May 31, 2002, Penn-America filed a motion for judgment as a matter of law, or in the alternative a new trial. See Fed. R. Civ. P. 50. The district court denied that motion and Penn-America appealed.

II.

On appeal, Penn-America challenges the jury verdict and the district court's entry of judgment in favor of McQuay on the breach of contract claim. Penn-America submits that the jury verdict and judgment must be reversed because McQuay was not the real party in interest. Alternatively, Penn-America asserts that McQuay only had a one-third interest in the insured property and that damages should be remitted accordingly. We review the denial of a motion for judgment as a matter of law *de novo* applying the same legal standard as the district court. Aquilino v. Univ. of Kan., 268 F.3d 930, 933 (10th Cir. 2001). "A party is entitled to judgment as a matter of law 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the

4

opposing party's position.'" Id. (quoting Tyler v. RE/MAX Mountain States, Inc., 232 F.3d 808, 812 (10th Cir. 2000)).

## A.

In federal court, "[e]very action shall be prosecuted by the real party in interest." Fed. R. Civ. P. 17(a). "[T]he real party in interest is the one who, under applicable substantive law, has the legal right to bring suit." Fed. Deposit Ins. Corp. v. Gelderman Inc., 975 F.2d 695, 698 (10th Cir. 1992). In a diversity case, the forum state's substantive law determines whether a party is the real party in interest. United States Cellular Inv. Co. v. Southwestern Bell Mobile Sys., Inc., 124 F.3d 180, 182 (10th Cir. 1997). "The forum state's procedural statute or rule defining the real party in interest concept is not applicable, however, because it only governs who may sue in the state courts; under Rule 17(a), the federal courts are concerned only with that portion of state law from which the specific right being sued upon stems." K-B Trucking Co. v. Riss Inter'l Corp., 763 F.2d 1148, 1153 (10th Cir. 1985) (internal quotations and citation omitted).

Under Oklahoma law, "[i]t is well settled that both the validity and enforceability of an insurance contract depend upon the presence of an insurable interest in the person who purchased the policy." Snethen v. Okla. State Union of the Farmers Educ. and Coop. Union of Am., 664 P.2d 377, 379 (Okla. 1983). The Oklahoma Supreme Court has held that "there is an insurable interest in the

property if the insured would gain some economic advantage by its continued existence or would suffer some economic detriment in case of its loss or destruction."[1]  Id. at 380.  If an insurable interest exists, the insured has "a right to enforce the [insurance] contract *regardless of the property's legal status*."  Id. (emphasis added).  In sum, "[i]t is well settled that any person has an insurable interest in property, by the existence of which he will gain an advantage, or by the destruction of which he will suffer a loss, whether he has . . . any title in, or lien upon, or possession of the property itself."  Harrison v. Fortlage, 161 U.S. 57, 65 (1896).

Several cases establish that a "right of property is not an essential ingredient of insurable interest; any limited or qualified interest, whether legal or equitable, or any expectancy of advantage, is sufficient."  State Farm Fire and Cas. Co. v. Suggs, 833 F.2d 883, 887 (10th Cir. 1987) (internal quotations and citations omitted).  For example, in Hartford Fire Ins. Co. v. Carter, 196 F.2d 992, 993-995 (10th Cir. 1952), we held the plaintiffs had an insurable interest under Oklahoma law in a tavern destroyed by fire because the jury found plaintiffs were the beneficial owners of the tavern.  Similarly, in Conti v. Republic Underwriters

---

[1] The Oklahoma Insurance Code defines "insurable interest" as "any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment."  36 Okla. Stat. Ann. § 3605(B).

6

Ins. Co., 782 P.2d 1357, 1358-60 (Okla. 1989), the Oklahoma Supreme Court held that a plaintiff-insured had an insurable interest in a house he lived in that was destroyed by fire. In Conti, the deed to the house was in the name of a third party and that fact was never disclosed to the defendant-insurer. Id. at 1359. Rejecting the defendant-insurer's argument that plaintiff did not have an insurable interest in the property, the court explained that "[i]t has long been recognized in Oklahoma that an insurer may not escape its contractual obligation to one who has equitable title, beneficial ownership and undisputed possession of property, even though bare legal title rests in another." Id. at 1360.

In this case, McQuay had both legal and equitable interests in the tavern. McQuay's equitable interest consisted of a one-third ownership interest in KC's LLC by virtue of the limited liability operating agreement.[2] Further, McQuay's equitable interest consisted of his economic interest in the tavern's continued existence. McQuay had an interest in the tavern's future because under the limited liability operating agreement he was entitled to a pro rata share of the cash the company generated. McQuay's legal interest in the property consisted of his status as a mortgagor of the tavern and his continued liability on the mortgage.

---

[2] An equitable interest exists when a person holds an ownership interest in a venture. Equity refers to the financial definition that an owner's equity in a business is equal to the business's assets minus its liabilities. Black's Law Dictionary 374 (6th ed. 1991).

7

See, e.g., Willis v. Nowata Land and Cattle Co., 789 P.2d 1282, 1284 (Okla. 1989) (noting that "the borrower retained an insurable interest in the mortgaged premises at the time of the loss."); Suggs, 833 F.2d at 887-88 (holding that co-obligors on a note secured by a mobile home had an insurable interest in the mobile home because they would suffer loss upon its destruction). In addition, Oklahoma is a lien theory state. 42 Okla. Stat. Ann. § 10. As such, McQuay retained "all the incidents of ownership" in the mortgaged property as mortgagor. See Teachers Ins. & Annuity Ass'n of Am. v. Okla. Tower Assoc. Ltd. P'ship, 798 P.2d 618, 620 (Okla. 1990).

McQuay also suffered economic loss as a result of the tavern's destruction because he had to obtain additional insurance to avoid defaulting on his mortgage. The new insurance resulted in an increase of roughly $112 per month to his mortgage payments. Therefore, McQuay had an insurable interest in the tavern because he stood to gain an economic advantage in the tavern's continued existence and bore an economic loss in the tavern's destruction.[3] Consequently, McQuay had a right to enforce the insurance contract under Oklahoma law, and hence, was a real party in interest for purposes of Rule 17(a).

---

[3] We also agree with the Oklahoma Supreme Court's rejection of Penn-America's argument that McQuay did not have an insurable interest solely because bare legal title to the property was in the name of KC's LLC. See Conti, 782 P.2d at 1360.

B.

Alternatively, Penn-America argues McQuay's insurable interest is limited to his one-third interest in KC's LLC. Penn-America submits that the "judgment is excessive and should be reversed" because the jury did not follow the district court's instruction that "[i]n cases in which the value of property destroyed exceeds an insured's interest in the property, an insured may recover from the insurance company only the value of his insurable interest, and cannot recover the full value of the property." The court also instructed the jury, however, that:

> The Plaintiff claims that the Defendant is not entitled to claim that he lacks an insurable interest or has only a limited insurable interest in the insured property because he disclosed the actual owner of the insured property to his insurance agent when procuring the insurance policy.
> Under Oklahoma law, a licensed insurance agent who solicits or negotiates an application for insurance is regarded as representing the insurance company and not the insured.
> As a result, disclosures made by an insured to an insurance agent as to the actual status of title to insured property are imputable to the insurance company.
> If you find that the Plaintiff disclosed the actual owner of the insured property to his insurance agent when procuring the insurance policy, that knowledge is imputed to the Defendant, and the Defendant is estopped from asserting that Plaintiff had no insurable interest *or only a limited insurable interest*.

(Aplt's App. at 222) (emphasis added). Penn-America did not object to the court's "estoppel instruction" at trial. Although unclear, we construe Penn-America's argument as a challenge to the district court's jury instructions.

9

The jury instructions must be considered as a whole. Reed v. Landstar Ligon Inc., 314 F.3d 447, 454-55 (10th Cir. 2002). We review a jury instruction for plain error when a party fails to object to the instruction at trial. Telecor Comm. Inc. v. Southwestern Bell Tel. Co., 305 F.3d 1124, 1142 (10th Cir. 2002); Fed. R. Civ. P. 51 ("No party may assign as error the giving or failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict . . . ."). Under the plain error standard, we will affirm the instruction unless it was patently erroneous and prejudicial. Unit Drilling Co. v. Enron Oil & Gas Co., 108 F.3d 1186, 1190 (10th Cir. 1997).

The district court's jury instructions, as a whole, were neither patently erroneous nor prejudicial. First, the court's "estoppel instruction" was not patently erroneous; to the contrary, the instruction provided a correct statement of Oklahoma law. See Hartford Fire Ins. Co. v. Martin, 381 P.2d 877, 881 (Okla. 1963) (noting it is well established in Oklahoma "that where the agent of an insurance company is given authority to take applications for the company's policies, knowledge of material facts, acquired by him in doing so, is imputed to said company."); McGehee v. Farmers Ins. Co., 734 F.2d 1422, 1424 (10th Cir. 1984) (holding defendant-insurer was estopped under Oklahoma law from asserting the plaintiffs had no insurable interest when the insurance agent knew plaintiffs were not the record owners of the insured property and nevertheless

10

issued the policy). Second, Penn-America was not prejudiced by the court's "estoppel instruction" because the testimony of Penn-America's insurance agent, Amos, established that McQuay instructed her to name KC's LLC as an insured under the Policy. Accordingly, the district court properly denied Penn-America's motion for judgment as a matter of law or a new trial pursuant to Rule 50 because the evidence supported McQuay's position.

## III.

McQuay cross-appeals the district court's order denying his motion to amend the judgment to include an award of prejudgment interest on the breach of contract damage award. See Fed. R. Civ. P. 59(e). "Prejudgment interest on a federal court's judgment in a diversity case is a matter of state law." Macsenti v. Becker, 237 F.3d 1223, 1245 (10th Cir. 2001). We review a district court's denial of prejudgment interest under an abuse of discretion standard; however, any legal interpretation or statutory analysis the district court performs in denying prejudgment interest is reviewed *de novo*. See Driver Music Co. v. Commercial Union Ins. Co., 94 F.3d 1428, 1433 (10th Cir. 1996).

## A.

In Oklahoma, two statutory provisions govern an award or denial of prejudgment interest in a breach of insurance contract case. First, Oklahoma's Insurance Code provides that "[i]f the insured is the prevailing party, the court in

11

rendering judgment *shall add interest on the verdict* at the rate of fifteen percent (15%) per year from the date the loss was payable pursuant to the provisions of the contract to the date of the verdict." 36 Okla. Stat. Ann. § 3629(B) (emphasis added). Second, Oklahoma's general prejudgment interest statute provides that "[a]ny person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon . . . ." 23 Okla. Stat. Ann. § 6.

In <u>Taylor v. State Farm Fire & Cas. Co.</u>, 981 P.2d 1253, 1261 (Okla. 1999), the Oklahoma Supreme Court construed 36 Okla. Stat. Ann. § 3629(B) and 23 Okla. Stat. Ann. § 6 *in pari materia*. The court explained that when § 3629(B) is construed with § 6, the purview of § 3629(B) is restricted to property-loss recoveries in which the insured loss was (1) for a liquidated amount, or (2) for an amount that could be made ascertainable by reference to well-established market values. <u>Id.</u> Hence, before the prevailing party can be awarded prejudgment interest, a court must determine that at the time the proof of loss was denied, the quantum of the loss could be ascertained by reference to market values. <u>Id.</u> The Oklahoma Supreme Court also explained, however, that "[d]amages are not certain where their calculation is left to the best judgment of the fact-finder or if

12

conflicting evidence must be weighed to determine the precise amount of damages due." Id. at 1261 n.45.

B.

McQuay challenges the district court's denial of prejudgment interest from the date the loss was payable under the Policy. McQuay argues the insured loss was for an amount that could be ascertained by reference to well-established market values as evidenced by his public insurance adjuster's ability to establish the market value of the tavern. We reject McQuay's *ad hoc* argument that damages were certain or ascertainable in this case prior to trial.

In the final pretrial order, McQuay identified his damages on the breach of contract claim as an issue to be litigated. The district court instructed the jury on insurable interest and damages for the breach of contract claim. At trial, McQuay testified that in estimating the actual cash value of the contents of KC's LLC, some of the estimates were "guesswork," but that he believed they were in the "ballpark." (Aplt's App. at 275). Thus, an award of damages was clearly a question of fact for the jury; it was not even certain McQuay would recover *any* damages. Therefore, the district court properly concluded McQuay's damages were not ascertainable until the jury returned a verdict. Thus, an award of prejudgment interest under 36 Okla. Stat. Ann. § 3629(B) and 23 Okla. Stat. Ann. § 6 was improper. See Taylor, 981 P.2d at 1261 (explaining that "if a (property

13

loss) demand's value is unascertainable until its quantum is judicially settled, no prejudgment interest is the victor's due.").

AFFIRMED.

Entered for the Court,

Bobby R. Baldock
Circuit Judge